# 18-828

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

——— ◆ ◆ ———

UTICA MUTUAL INSURANCE COMPANY,

*Plaintiff-Counter-Defendant-Appellee,*

—against—

FIREMAN'S FUND INSURANCE COMPANY,

*Defendant-Counter-Claimant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR
## DEFENDANT-COUNTER-CLAIMANT-APPELLANT

PETER R. CHAFFETZ
STEVEN C. SCHWARTZ
ERIN E. VALENTINE
CHAFFETZ LINDSEY LLP
1700 Broadway, 33rd Floor
New York, New York 10019
(212) 257-6960

*Attorneys for Defendant-Counter-
Claimant-Appellant*

# TABLE OF CONTENTS

Page

I.  SUMMARY OF THE ARGUMENT ON REPLY.................................................1

II. ARGUMENT.................................................................................3

    A.  Neither The Reinsurance Contracts Nor The Umbrella Policies
    Covered The Goulds Settlement......................................................3

        1.  Utica's Allocation To The Umbrella Policies Is Barred By Their
        Unambiguous Terms .........................................................4

        2.  Follow-The-Settlements Does Not Cure The Defects In Utica's
        Contract Interpretation .......................................................7

    B.  The District Court's Erroneous Admission of the Hearsay Dismissal
    Order Requires a New Trial .........................................................13

        1.  Utica Proffered The Dismissal Order For The Truth Of Its
        "Findings" That The Goulds Settlement Was Reasonable And In
        Good Faith .....................................................................13

        2.  Fireman's Fund Was Not Required To Seek A Limiting
        Instruction....................................................................16

        3.  The District Court's Erroneous Admission Of The Hearsay Order
        Was Not Harmless............................................................17

    C.  The District Court's Erroneous Late Notice Instructions Require A
    New Trial...........................................................................22

        1.  Fireman's Fund Did Not Waive Its Objections ...........................22

        2.  The Instructions At Issue Were Erroneous ...............................24

        3.  The Errors Were Not Harmless.............................................27

    D.  The District Court's Award Of Nearly $ 1.5 Million In Excess
    Interest Was Unquestionably Erroneous And Requires Correction.............28

III. CONCLUSION .................................................................30

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                    **Page(s)**

*Abascal v. Fleckenstein,*
  820 F.3d 561 (2d Cir. 2016) ..................................................................17, 18, 19

*Am. Bankers Ins. Co. of Fla. v. Northwestern Nat'l Ins. Co.,*
  198 F.3d 1332 (11th Cir. 1999) ........................................................................11

*Arrowood Surplus Lines Ins. Co. v. Westport Ins. Co.,*
  395 F. App'x. 778 (2d Cir. 2010) ......................................................................9

*United States v. Cardascia,*
  951 F.2d 474 (2d Cir. 1991) .............................................................................15

*Chowdhury v. Worldtel Bangladesh Holding, Ltd.,*
  746 F.3d 42 (2d Cir. 2014) ...............................................................................16

*Christiania Gen'l Ins. Corp. v. Great Am. Ins. Co.,*
  979 F.2d 268 (2d Cir. 1992) ........................................................................10, 27

*United States v. Cummings,*
  858 F.3d 763 (2d Cir. 2017) .............................................................................19

*United States v. Detrich,*
  865 F.2d 17 (2d Cir. 1988) ...............................................................................15

*United States v. Dupree,*
  706 F.3d 131 (2d Cir. 2013) .............................................................................16

*Dudley ex rel. Estate of Patton v. Penn-Am. Ins. Co.,*
  313 F.3d 662 (2d Cir. 2002) .............................................................................28

*United States v. Ford,*
  435 F.3d 204 (2d Cir. 2006) .............................................................................27

*Galli v. Metz,*
  973 F.2d 145 (2d Cir. 1992) ...............................................................................7

*Global Reins. Corp. of Am. v. Century Indem. Co.,*
  30 N.Y.3d 508 (2017) .........................................................................................9

*United States v. Graham*,
477 F. App'x 818 (2d Cir. 2012) .........................................................................16

*Indem. Ins. Co. of N. Am. v. W&T Offshore Inc.*,
756 F.3d 347 (5th Cir. 2014) ................................................................................5

*Jones v. UNUM Life Ins. Co. of Am.*,
223 F.3d 130 (2d Cir. 2000) ...............................................................................29

*Lyell Theatre Corp. v. Loews Corp.*,
682 F.2d 37 (2d Cir. 1982) .................................................................................29

*Mattson v. Schultz*,
145 F.3d 937 (7th Cir. 1998) ..............................................................................15

*Mentor Ins. Co. (U.K.) Ltd. v. Brannkasse*,
996 F.2d 506 (2d Cir. 1993) ...............................................................................10

*Middle Mkt. Fin. Corp. v. D'Orazio*,
2002 U.S. Dist. LEXIS 17817 (S.D.N.Y. 2002)..................................................15

*United States v. Mitchell*,
328 F.3d 77 (2d Cir. 2003) .................................................................................21

*N. River Ins. Co. v. ACE Am. Reins. Co.*,
361 F.3d 134 (2d Cir. 2004) ...............................................................................11

*N. River Ins. Co. v. CIGNA Reins. Co.*,
52 F.3d 1194 (3d Cir. 1995) ....................................................................9, 10, 11

*United States v. Rogers*,
918 F.2d 207 (D.C. Cir. 1990)............................................................................16

*Southern Nat. Gas Co. v. Wilson*,
304 F.2d 253 (5th Cir. 1962) ..............................................................................23

*Terra Firma Investments (GP) 2 Ltd. v. Citigroup Inc.*
716 F.3d 296 (2d Cir. 2013) ...............................................................................27

*Travelers Cas. and Sur. Co. v. Certain Underwriters at Lloyd's of London*,
96 N.Y.2d 583 (2001) .......................................................................................8, 9

*Travelers Cas. and Sur. Co. v. Ins. Co. of N. Am.*,
609 F.3d 143 (3d Cir. 2010) ........................................................................12, 13

*Trustees of Univ. of Pennsylvania v. Lexington Ins. Co.*,
815 F.2d 890 (3d Cir. 1987) ...............................................................................15

*U.S. Fid. & Guar. Co. v. Am. Re-Ins. Co.*,
20 N.Y.3d 407 (2013) .........................................................................................12

*Unigard Sec. Ins. Co., Inc. v. N. River Ins. Co.*,
4 F.3d 1049 (2d Cir. 1993) .................................................................................27

*UnitedHealth Grp. Inc. v. Exec. Risk Specialty Ins. Co.*,
870 F.3d 856 (8th Cir. 2017) ..............................................................................15

*Utica Mut. Ins. Co. v. Clearwater Ins. Co.*,
906 F.3d 12 (2d Cir. 2018) ...................................................................................8

*United States v. Walker*,
191 F.3d 326 (2d Cir. 1999) ...............................................................................21

**Other Authorities**

21A C. Wright & A. Miller, Federal Practice and Procedure § 5065
(2d ed. 2018 update) ...........................................................................................17

American Heritage Dictionary (Office Ed.) at 33.......................................................5

Fed. R. Civ. P. 51 ............................................................................................22, 23, 24

Fed. R. Civ. P. 59 ......................................................................................................29

Fed. R. Civ. P. 60 ................................................................................................28, 29

Fed. R. Evid. 103(b).................................................................................................21

Fed. R. Evid. 105 .....................................................................................................16

N.Y.C.P.L.R. §5001(b) .............................................................................................28

# I. SUMMARY OF THE ARGUMENT ON REPLY

**Coverage.** Fireman's Fund established its first ground for appeal – lack of coverage – by demonstrating that neither the terms of the reinsurance contracts nor the reinsured umbrella policies can be read to provide coverage in excess of aggregate limits for bodily injury. Without such coverage, there is no basis for Utica's breach of contract claim. This defense does not implicate "follow the settlements."

Utica's alternative reading contradicts the plain terms of the umbrella policies. Utica rests its case upon its *ipse dixit* interpretation of the words "applicable limits." The umbrella policies cover only losses that exceed "the *applicable limits* of liability of the underlying insurance as stated in the Schedule of Underlying Insurance Policies." Utica contends that the absence of any reference to bodily injury aggregate limits in the Schedule is irrelevant because the words "applicable limits" mean only the underlying occurrence limit.

We show below that this reading is irrational. Among other fatal problems, aggregate limits are unquestionably "limits" as a matter of plain English, and are just as "applicable" to define coverage as occurrence limits. Thus, there is no rational basis for Utica's purported distinction. Equally fatal, Utica's interpretation depends on its implicit assumption that an aggregate limit can be implied into the

Schedule from extrinsic sources. The contracts' integration clauses unambiguously bar that reading.

Thus, the reinsurance contracts and the umbrella polices can *only* be interpreted as providing no coverage for the Goulds losses. The judgment should therefore be reversed.

**The Hearsay Dismissal Order ("Order").** Utica's attempt to defend the admission of hearsay "findings" by the judges who presided over the Goulds coverage litigation hinges on a false premise. Utica now argues that it proffered that Order for the limited purpose of proving its "legal effect." That is false. Utica expressly proffered the Order as evidence of the truth of its findings regarding the reasonableness of the settlement. Moreover, it argued that the Order was admissible for all purposes. And that is how it was admitted and used. Having featured the Order in its summation, where it told the jury that the judges would not have signed such an Order unless its findings were true, Utica cannot credibly argue that the erroneous admission of this document was harmless. If this Court does not reverse for lack of coverage, this error requires a new trial.

**Improper Jury Instructions on Late Notice.** The trial transcript refutes any suggestion that Fireman's Fund waived its objections to the District Court's failure to give proper instructions on late notice. Because the court made three

errors that, both singly and jointly, failed to provide the jury with accurate guidance as to how to assess that defense, this issue also requires a new trial.

**Interest.** While the Court should not need to reach this issue, Utica identifies nothing to prevent this Court from correcting the legally erroneous interest calculation, which awarded Utica a $1.5 million windfall, in the event that it otherwise affirms the judgment below.

## II.    ARGUMENT

### A.    Neither The Reinsurance Contracts Nor The Umbrella Policies Covered The Goulds Settlement

In its opening brief, Fireman's Fund demonstrated that the District Court erred by denying its repeated motions for judgment as a matter of law that the terms of the umbrella policies, as incorporated by reference into the reinsurance contracts, do not cover Utica's settlement with Goulds.

The problem is that Utica allocated thousands of small asbestos claims to umbrella policies that, by their clear terms, cover only larger ones. That allocation violated the umbrella policies' coverage terms, which apply only in excess of underlying limits specified on a schedule. The schedule, however, does not refer to an underlying *aggregate* limit for bodily injury. As a result, the umbrella polices can be triggered only by the relatively rare individual claim that is large enough to exceed the underlying per person or occurrence limit. Utica ignores that clear contractual requirement.

Instead, Utica argues that the reinsurance contracts' follow-the-settlements clauses shield its allocation from scrutiny. That argument is wrong for two reasons. First, follow-the-settlements does not apply at all, because that principle cannot change the scope of reinsurance coverage as defined by the umbrella policy terms incorporated by reference into the reinsurance contracts. Second, even if follow-the-settlements did apply, it would not require Fireman's Fund to pay claims that are unambiguously outside the scope of the reinsured policies.

Before turning to follow-the-settlements, we show that Utica's self-serving interpretation of the underlying policies is untenable.

## 1. Utica's Allocation To The Umbrella Policies Is Barred By Their Unambiguous Terms

The umbrella policies provide that they are triggered *only* by losses that exceed primary policy limits stated in a Schedule to each umbrella policy. Because the Schedules here do not include aggregate bodily injury limits, the umbrella policies are triggered only by individual losses that are each large enough to exhaust the primary policy's per person or occurrence limits.

Utica's contrary position is based on a blatant misreading of the umbrella policies. The key provision states that:

> [Utica] shall be liable only for the ultimate net loss resulting from any one occurrence in excess of ...
>
> (a)    The amounts of the ***applicable limits*** of liability of the underlying insurance as stated in the Schedule of Underlying

> Insurance Policies less the amount, if any, by which ***any
> aggregate limit*** of such insurance has been reduced by payment
> of loss, hereinafter called the underlying limit.

*See, e.g.*, A-1661 (1966 Umbrella Policy Insuring Agreements, Article III(a))

(emphasis added).

Utica's argument rests on two premises. First, Utica assumes that the umbrella policy's reference to "applicable limits" actually means "occurrence limits," and therefore that the contract does not require other types of limits to be stated on the Schedule. Second, Utica posits that, because the policy refers to "any aggregate limit," such aggregate limits need not appear on the Schedule. Neither premise is valid.

To begin, the plain meaning of "applicable" is "capable of being applied." American Heritage Dictionary (Office Ed.) at 33. For any given loss, both the occurrence limit and any aggregate limit are capable of being applied. Accordingly, as a linguistic matter, the "applicable limits of liability" necessarily include both the occurrence limit and the aggregate limit.[1]

Context cannot change this analysis. Utica asserts that, because the lead-in to the provision quoted above refers to Utica's liability for "any one occurrence,"

---

[1] Citing *Indem. Ins. Co. of N. Am. v. W&T Offshore Inc.*, 756 F.3d 347, 353 (5th Cir. 2014), Utica claims that the "applicable" limit is the occurrence limit. But that case does not involve aggregate limits, and simply does not address the issue here. Likewise, the treatise Utica cites simply defines various kinds of policy limits.

the only "applicable" limit is the underlying occurrence limit. This makes no sense. An occurrence is the prerequisite for *any* liability under the umbrella policy. But whether an occurrence actually triggers the umbrella policy depends on the application of *both* the underlying policy's occurrence limit *and* – if stated in the umbrella Schedule – its aggregate limit. Further, the umbrella schedules also refer to an underlying "each person" limit – yet another "applicable" limit. Thus, "applicable" is simply not a synonym of "occurrence."

Utica next focuses on the word "any," arguing that the umbrella policies provide coverage in excess of "any aggregate limit," *whether stated in the Schedule or not.* This cannot be right. It would mean that the umbrella policies themselves were incomplete, and that it would be impossible to determine what coverage they provide without looking outside their four corners.

While Utica apparently has no problem with the idea that operative aggregate limits can somehow be imported from outside the policy itself, the umbrella policies' integration clauses negate that argument. That clause states that the policy "embodies all agreements existing between [Goulds] and [Utica] … relating to this insurance." *See, e.g.,* A-1662 at ¶ 13. This means that all of the terms of the umbrella policy must be found *within* its four corners. *The only way to give effect to the integration clause is to conclude that the absence of underlying aggregate limits in the Schedules means that they are simply not terms of the*

*umbrella policies.* As a result, the umbrella policies cannot be triggered by individual claims that do not exceed the primary occurrence limit stated in the Schedule – even if they exceed an aggregate limit stated in the primary policy.

At least one other fundamental flaw defeats Utica's purported reading of the policy language. If aggregate limits were not required to be stated in the Schedule, why did Utica put the aggregate limit for *property damage* there? The fact that it did is relevant in three ways. First, it shows that Utica's contemporaneous practice was to list aggregate limits in the Schedule. Second, the inclusion of aggregate limits for property damage supports a strong inference that the omission of a bodily injury aggregate limit was intentional. Finally, if it was necessary to state only occurrence limits in the Schedule, then the others listed there are superfluous. *See Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) ("an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible" (internal quotation marks and ellipsis omitted)).

### 2. Follow-The-Settlements Does Not Cure The Defects In Utica's Contract Interpretation

Utica insists that follow-the-settlements insulates its interpretation of the umbrella policies from review. But follow-the-settlements cannot save its glaringly defective contractual reading.

### a. Follow-the-Settlements Cannot Override Policy Terms Incorporated Into The Reinsurance Contracts

To begin, follow-the-settlements does not apply at all. It is black letter law that a follow-the-settlements clause "does not alter the terms" of a reinsurance contract. *See, e.g., Travelers Cas. and Sur. Co. v. Certain Underwriters at Lloyd's of London*, 96 N.Y.2d 583, 596 (2001). Here, those terms include the terms of the umbrella policies, which are expressly incorporated into the reinsurance contracts by their "follow form" provisions. *See, e.g., Utica Mut. Ins. Co. v. Clearwater Ins. Co.*, 906 F.3d 12, 16 (2d Cir. 2018) ("The standard *follow-the-form* or *following-form* clause . . . provides that all the terms and conditions of the reinsured insurance policy are incorporated by reference into the reinsurance contract ...."); Fireman's Fund Br. at 32-41.

According to Utica, Fireman's Fund's reliance on a coverage limitation incorporated into its own contract "runs smack into FFIC's express 'follow-the-settlements' obligation ...." Utica Br. at 30. It claims that "[a] mountain of authority confirms that the follow-the-settlements clause prevents FFIC from pursuing" that defense. *Id.* at 31. Utica's "mountain," however, does not rise to the level of a molehill.

In fact, *none* of the cases Utica cites addresses the effect of a follow-the-settlements clause on a term incorporated into a reinsurance contract. Nor do any of Utica's cases discuss the interplay between the follow-the-settlements and

follow-form clauses. Thus, Utica's assertion that "courts have rebuffed similar efforts for decades," *id.* at 33, is hyperbole at best.

Similarly, contrary to Utica's suggestion, courts have *not* expressly distinguished between terms found within the four corners of a reinsurance contract and those incorporated by reference. True, the *Travelers* and *Arrowood* decisions addressed terms within the four corners. *Travelers*, 96 N.Y.2d at 595-97; *Arrowood Surplus Lines Ins. Co. v. Westport Ins. Co.*, 395 F. App'x. 778 (2d Cir. 2010). But neither case held that the same logic would be inapplicable to an incorporated term.

Indeed, there is no reason why, as Utica insists, incorporated terms should be given less weight. Terms that are incorporated by means of a "follow form" clause are still terms of the reinsurance contract, not extrinsic evidence. *Global Reins. Corp. of Am. v. Century Indem. Co.*, 30 N.Y.3d 508, 519 (2017) (citing *Union Carbide Corp. v. Affiliated FM Ins. Co.*, 16 N.Y.3d 419, 425 (2011)). And because "[r]einsurance contracts are governed by the same principles that govern contracts generally," *id.* at 518, there is no basis for treating some terms of the contract as inferior to others.

Moreover, the "follow form" provision serves a critical function. A facultative reinsurer specifically underwrites the individual policy it is reinsuring. *N. River Ins. Co. v. CIGNA Reins. Co.*, 52 F.3d 1194, 1199 (3d Cir. 1995). The

"follow form" provision therefore assures the reinsurer that it will cover only the kind of risk it has underwritten:

> A [facultative] reinsurance certificate typically includes a 'following forms' provision that ***expressly limits the reinsurance to the terms and conditions of the underlying policy*** and provides that the reinsurance certificate will cover only the kinds of liability covered in the original policy issued to the insured.

*Id.* (emphasis added). This necessarily limits a facultative reinsurer's follow-the-settlements obligations:

> This protection for the reinsurer is based on principles of contractual intent: a reinsurer cannot be held liable for a kind of loss that it did not agree to cover. ***This distinction between reinsured and unreinsured risk is particularly important in facultative reinsurance where the reinsurer accepts only specific risks.***

*Id.* at 1206-07 (emphasis added). Thus, allowing the reinsurer to enforce incorporated terms of the reinsurance contract is required not only by basic contract law, but also by commercial logic.

Finally, it is simply not true that "[Fireman's Fund's] theory would eviscerate follow-the-settlements." Utica Br. at 35. The principle has always governed the broad array of ceding company claim decisions that do not involve interpretation of the insurance policy. *See, e.g., Mentor Ins. Co. (U.K.) Ltd. v. Brannkasse*, 996 F.2d 506 (2d Cir. 1993) (whether marine loss was "constructive total loss"); *Christiania Gen'l Ins. Corp. v. Great Am. Ins. Co.*, 979 F.2d 268 (2d

Cir. 1992) (whether policy could be rescinded); *Am. Bankers Ins. Co. of Fla. v. Northwestern Nat'l Ins. Co.*, 198 F.3d 1332 (11th Cir. 1999) (number of occurrences); *N. River Ins. Co. v. ACE Am. Reins. Co.,* 361 F.3d 134 (2d Cir. 2004) (allocation).

### b. Follow-The-Settlements Does Not Allow Utica To Expand The Coverage Of The Reinsured Umbrella Policies

Even if follow-the-settlements applied here, it would not give Utica a license to allocate thousands of small asbestos claims to umbrella policies that unambiguously cover only large ones.

Indeed, Utica acknowledges that "follow-the-fortunes does not require indemnification for losses not covered by the underlying policies." Utica Br. at 33 (quoting *Travelers Cas. & Sur. Co. v. Gerling Global Reins. Corp. of Am.*, 419 F.3d 181, 193 (2d Cir. 2005)). For that reason, the Third Circuit has held that courts *must* review the scope of coverage claimed by the ceding company:

> Under New York law, proper application of ***"follow the fortunes" requires us to analyze North River's coverage under the original policy*** ….
>
> \*\*\*
>
> We do not believe that asking whether the risk was unreinsured is tantamount to de novo review.

*CIGNA Reins. Co.*, 52 F.3d at 1203-04 (emphasis added).

Utica nevertheless insists that "[t]he 'risk not covered by the reinsurance' defense is exceedingly narrow." Utica Br. at 35. It cites an extreme example:

"Third-party asbestos liability claims being ceded under dental insurance policies fits the bill; third-party asbestos liability claims being ceded under liability policies covering an asbestos products manufacturer does not." *Id.*

This is not the standard. Rather, follow-the-settlements requires that the ceding company provide at least an "objectively reasonable" basis for allocating a loss to a given policy. *See U.S. Fid. & Guar. Co. v. Am. Re-Ins. Co.*, 20 N.Y.3d 407 (2013). In that case, the court upheld the reinsured's decision to allocate a loss to a single policy. *Id.* at 426-28. But it did so only after finding that, under the terms of the policy and contemporaneous case law, that result was reasonable. *Id.*

But such scrutiny does not always uphold the ceding company's allocation. For example, in *Travelers Cas. and Sur. Co. v. Ins. Co. of N. Am.*, 609 F.3d 143 (3d Cir. 2010), a ceding company allocated its settlement of breast implant claims across multiple layers and years of its coverage. Two of its excess policies had three-year rather than one-year terms. The allocation assumed that the per-occurrence limits of those policies would apply separately for each of the three years the policies were in force. The facultative reinsurer of those policies complained that this "annualization" tripled the amount it had agreed to reinsure. After examining the policy language and contemporaneous case law, the court held that the reinsurer was not bound by the cedent's interpretation:

> In sum, Travelers has pointed to nothing in the policy language, its prior assessments of its potential liability, or its interactions

with [the policyholder] to indicate that, when it performed its allocation, it was reasonable to expect that, had the coverage dispute been litigated, [the policyholder] could have successfully pressed the annualization issue against it, or even that it would have had any reason to do so.

*Id.* at 169.

Notably, the insurer had *not* ceded the breast implant claims under a dental insurance policy. Rather, the policies covered breast implant claims – but not the way the insurer had allocated them. The problem here is indistinguishable.

In short, Utica cannot invoke follow-the-settlements to protect an allocation that is contrary to the unambiguous terms of both the umbrella policies and the reinsurance contracts.

### B. The District Court's Erroneous Admission of the Hearsay Dismissal Order Requires a New Trial

#### 1. Utica Proffered The Dismissal Order For The Truth Of Its "Findings" That The Goulds Settlement Was Reasonable And In Good Faith

Utica's argument that Exhibit P-205 (or "the Order") was properly admitted hinges entirely on the false, newly invented premise that it introduced the Order merely to "illustrate[] how it resolved its dispute with Goulds." Utica Br. at 42. Tellingly, Utica *fails even to mention* its proffer to the District Court, which flatly contradicts its argument on appeal.

The trial transcript speaks for itself. After Utica moved for admission of the Order, Fireman's Fund objected on the basis that, "[t]he judges in that case saying

that this was a good faith settlement is clearly hearsay."  A-408 (Tr. 263:18-19).

Counsel for Utica responded:

> [I]t's not hearsay. The case law on follow the settlements in New York holds that … decisions of the court in the dispute that was being settled by the ceding company, Utica, are relevant on the issue of reasonableness of the cedent's action in settling, and this goes directly to that issue. ***It is completely relevant and not hearsay.***

A-409 (Tr. 265:19-25) (emphasis added).  Utica's argument was thus that the "decisions" of the judges overseeing the settlement – *i.e.*, the findings drafted by Utica – were not hearsay.  When asked directly by the District Court how it would use the Order, Utica made clear its hearsay purpose:

> THE COURT: What is the purpose of this document with regard to the jury as to -- I mean, how does this add to the resolution of the issues in this case?
>
> MR. SNEED:  The judges' order states that this was a complex dispute. . . and that it was compromised and settled in good faith and it was in the terms and conditions of the policies . . . ***P205, Your Honor, will be used by Utica to support the reasonableness of its actions in settling with Goulds.***
>
> THE COURT: Does this open the door for the judges coming in here and testifying as to the basis of their opinion?
>
> MR. SNEED: No, Your Honor, it does not. The order itself has legal effect, which is non-hearsay.

A-410 (Tr. 264:1-15, emphasis added).

Thus, Utica proposed to use "findings" that Utica's settlement with Goulds was reasonable and in good faith as evidence of the truth of those disputed facts.  It did not, as it now claims, introduce the Order merely to prove that it settled the

litigation.  And Utica's sole argument for the admission of those statements was that, because the Order had a legal effect, it thereby became entirely non-hearsay and admissible for all purposes.

Here, too, Utica asserts that "litigation filings and orders" are not hearsay because they "ha[ve] independent significance."  Utica Br. at 42.  However, two federal appellate rulings addressing this precise point both held to the contrary, ruling that a judge's factual finding that an insured's settlement is reasonable is inadmissible hearsay in a subsequent proceeding seeking indemnification for the settlement.  *See UnitedHealth Grp. Inc. v. Exec. Risk Specialty Ins. Co.*, 870 F.3d 856, 864 (8th Cir. 2017); *Trustees of Univ. of Pennsylvania v. Lexington Ins. Co.*, 815 F.2d 890, 906 (3d Cir. 1987).[2]

As those cases illustrate, the fact that judicial orders have "legal effect" does not authorize their use for any purpose.  Rather, "[w]hether or not a statement is hearsay depends upon what use the offeror intends to make of it."  *United States v. Detrich*, 865 F.2d 17, 20 (2d Cir. 1988); *see also, e.g.*, *United States v. Cardascia*, 951 F.2d 474, 486 (2d Cir. 1991) ("the purpose for which the statement is being

---

[2] The two cases Utica relies upon, *Mattson v. Schultz*, 145 F.3d 937 (7th Cir. 1998) and *Middle Mkt. Fin. Corp. v. D'Orazio*, 2002 U.S. Dist. LEXIS 17817 (S.D.N.Y. 2002), are not to the contrary.  Both involved the potential for non-hearsay use of trial transcripts in the special circumstances of a subsequent claim of attorney malpractice in that trial.

introduced must be examined"). Here, Utica proffered the Order for the truth of its findings. Its admission for that purpose was legal error.[3]

## 2. Fireman's Fund Was Not Required To Seek A Limiting Instruction.

As reflected in Federal Rule of Evidence 105, a party is only required to seek a limiting instruction to prevent the improper use of evidence initially admitted for a proper purpose. Utica's argument that Fireman's Fund waived its hearsay objection by not seeking a limiting instruction fails because it again rests on the false premise that the Order was introduced for a limited, non-hearsay purpose.

That is not what happened. Fireman's Fund objected to Utica's proffered use of the Order to prove the truth of the judges' factual "findings." Once the District Court overruled that objection and permitted that improper use of the evidence, there was no scope for a limiting instruction. In any event, a party's decision not to request a limiting instruction does *not* waive an objection to the admissibility of the evidence. *See, e.g.*, *United States v. Rogers*, 918 F.2d 207, 212

---

[3] Whether or not the Order is hearsay is a legal issue that this Court reviews *de novo. See, e.g.*, *Chowdhury v. Worldtel Bangladesh Holding, Ltd.*, 746 F.3d 42, 54 (2d Cir. 2014); *United States v. Graham*, 477 F. App'x 818, 823 (2d Cir. 2012). The case Utica cites as imposing a narrower standard of review is not to the contrary. *United States v. Dupree*, 706 F.3d 131, 135 (2d Cir. 2013)("We review a district court's evidentiary rulings deferentially, reversing only for abuse of discretion [but a] district court abuses its discretion when [] its decision rests on an error of law . . ." (internal citations and quotation marks omitted)).

(D.C. Cir. 1990) (a lawyer's decision not to ask for a limiting instruction "does not thereby waive his objection to the admission of evidence in the first instance"); 21A C. Wright & A. Miller, Federal Practice and Procedure § 5065 (2d ed. 2018 update) ("failure to request limitation does not 'waive' a proper objection to the admissibility of the evidence").

### 3. The District Court's Erroneous Admission Of The Hearsay Order Was Not Harmless

Utica fails to undermine Fireman's Fund's showing that each of the four factors this Court identified in *Abascal v. Fleckenstein,* 820 F.3d 561 (2d Cir. 2016), weighs heavily toward the conclusion that the erroneous admission of the Order was not harmless.

With respect to the first factor – whether the dismissal order "bore on the most important issues in the case" – Fireman's Fund has demonstrated that under both Utica's legal analysis and the court's jury instructions, the reasonableness of the settlement determined whether Fireman's Fund was required to follow the Goulds settlement. Fireman's Fund Br. at 47. Now, however, Utica asks this Court to disregard the centrality of follow-the-settlements to its case because Fireman's Fund – both at trial and here – disagrees with its legal analysis. Utica Br. at 49. This makes no sense. Fireman's Fund cannot be required to agree with Utica that follow-the-settlements applied in order to preserve its hearsay objection to a critical element of Utica's proof.

17

The second and fourth *Abascal* factors – whether the improperly admitted evidence was "merely cumulative or corroborative" and whether "appellee's case was particularly strong" – both relate to the strength of the appellee's case. Thus, Utica attempts to address both through its insistence that "substantial evidence" apart from the Order supported a conclusion that the settlement was reasonable. Utica Br. at 46. But this argument misses the point of both *Abascal* factors.

First, Utica's claimed "substantial evidence" cannot render the Order "simply cumulative or corroborative." Utica offers no answer to the wealth of case law recognizing the special danger inherent in the admission of such judicial hearsay. That danger is at its apex here where the judicial findings, actually written by Utica's counsel, purport to answer the *precise* question before the jury. *See* Fireman's Fund Br. at 45-48. Moreover, Utica's actions speak far louder than its present words. If Utica had really been confident that it could win without resort to judicial hearsay, it would not have created the Order to prove the reasonableness of the settlement, A-416-17 (Tr. 271:13-272:19), would not have introduced it, and would not have highlighted it in summation.

Second, Utica does not demonstrate that its case was otherwise so strong that the error was harmless. Utica merely cherry-picks its own evidence and asks this Court to credit it over Fireman's Fund's evidence. That is not the standard for harmlessness. The question is whether Utica's case was "particularly strong" such

that the erroneous admission of the Order was "unimportant in relation to everything else the jury considered." *Abascal*, 820 F.3d at 567 (internal quotation marks omitted). It was not. Rather, as the District Court recognized (taking into account the judicial hearsay), the evidence was equivocal: "Utica presented extensive evidence that its settlement decisions were reasonable . . . [Fireman's Fund] also presented extensive evidence refuting that position." SPA-71. That balanced assessment by the judge who tried the case (after denying Utica's motion for summary judgment) is flatly inconsistent with the sort of one-sidedness that could render the admission of judicial hearsay on an ultimate issue harmless.

Finally, with respect to the third *Abascal* factor – use of the erroneously admitted evidence in summation – Utica has no serious answer to the prejudice it intentionally created by telling the jury that the judges' signatures reflected their determination that the Order's reasonableness and good faith "findings" were true. A-1182-83 (Tr. 1854:22-1855:7); *see* Fireman's Fund Br. at 49. First, Utica argues that Fireman's Fund mitigated any harm by trying to convey through cross-examination its reasons that the jury should not rely on the Order. Utica Br. at 49. No authority supports Utica's novel theory that a party's attempt to diffuse the impact of prejudicial hearsay negates the error of its admission.[4] Moreover, this

---

[4] Utica's reference to *United States v. Cummings,* 858 F.3d 763, 744, 777 (2d Cir. 2017) appears to be a mis-citation.

19

argument ignores the special risk just discussed that juries are likely to give particular weight to judicial findings. Utica exploited that risk when it told the jury it must credit the judges' findings "no matter what this reinsurer says." A-1183 (Tr. 1855:5-7). Clearly Utica intended the Order to affect the jurors' views in a way that Fireman's Fund *could not* mitigate.

It is equally irrelevant that Fireman's Fund's counsel also addressed the dismissal order in his closing and therefore, in Utica's words, "was the first to bring it up." Utica Br. at 50. As an initial matter, this is factually incorrect. *Utica* first introduced the document into evidence over Fireman's Fund's objection and then highlighted the most prejudicial paragraph to the jury by asking Utica's general counsel to read it aloud. A-415 (Tr. 270:7-20). Moreover, it cannot be that to preserve its hearsay objection, Fireman's Fund was required to pretend in its closing argument that the Order was not before the jury. Unsurprisingly, Utica again fails to offer any authority for such a nonsensical rule.

Utica's remaining arguments serve only to expose the hopelessness of its "harmless error" position. To begin, it is irrelevant that Utica's reference to the order was "brief." Utica's explicit invitation to the jury to credit hearsay judicial findings on the issue that both Utica and the court told them was dispositive is prejudicial *per se*. By Utica's reasoning, a prosecutor's reference to an inadmissible confession or wrongfully seized evidence would be harmless so long

as it was concise. The sole case Utica cites for its contrary rule, *United States v. Mitchell*, 328 F.3d 77 (2d Cir. 2003), did not hinge on the brevity of the challenged remark. There the court held that a prosecutor's single reference to the defendant by his nickname could not have affected the verdict because the defendant's identity was not in question and the nickname had no bearing on any issue. *Id.* at 84.

The same goes for Utica's argument that "the absence of a contemporaneous objection suggests there was no prejudice." Utica Br. at 51. Fireman's Fund was not required to draw attention to Utica's prejudicial use of the judicial hearsay by interrupting Utica's closing argument to re-lodge its hearsay objection. *See, e.g.*, Fed. R. Evid. 103(b) ("Once the court rules definitively on the record . . . a party need not renew an objection . . . to preserve a claim of error for appeal."). Yet again, the situation here could not be more different from the case Utica offers as support. In *United States v. Walker*, 191 F.3d 326, 337 (2d Cir. 1999), this Court held that a defendant's failure to object to government counsel's applause at the close of defense counsel's summation indicated that that conduct had not adversely affected the trial atmosphere.

In short, Utica proffered and used the Order for an improper hearsay purpose, and there is no basis on which this Court could conclude that the Order

did not influence the jury's evaluation of a critical issue, exactly as Utica hoped it would.  If it does not reverse outright, this Court should grant a new trial.

## C. The District Court's Erroneous Late Notice Instructions Require A New Trial

Fireman's Fund demonstrated in its opening brief that the District Court's jury instructions were erroneous with respect to each element of its late notice defense.  To avoid the new trial that these errors require, Utica contends that: (1) Fireman's Fund waived its objections to two of the three instructions at issue; (2) none of the instructions was actually erroneous; and (3) any errors were harmless.  Each of Utica's arguments fails.

### 1. Fireman's Fund Did Not Waive Its Objections

According to Utica, Fireman's Fund waived its objections to the instructions on "timing of notice" and "routine practices" because it did not object "distinctly" as required under Rule 51.  Fed. R. Civ. P. 51(c)(1).  But Utica ignores the clear assurance the District Court gave to both parties at the charging conference that all objections based upon differences between the court's final instructions and the parties' requested instructions were preserved.  As Judge Hurd put it:

> We have had a charge conference, and each side has been given copies of the proposed jury instructions . . . .  For the record, I have reviewed all . . . of the proposed charge[s].  ***And to the extent that . . . the jury instructions differ from the requests, you both have objections, and those requests to that effect are denied.***

A-1145-1146 (Tr. 1782:22-1783:1) (emphasis added). Here, both instructions as to which Utica asserts waiver "differ[ed]" from Fireman's Fund's request. Thus, both instructions fell squarely within Judge Hurd's statement that "you both have objections."

Utica gives this point the back of its hand. In Utica's words, "[a]pparently FFIC believes its objections were preserved because the court's final instructions differed from the prior instructions it proposed." Utica Br. at 54. Whatever point Utica intended to make by that dismissive comment, it does not support a finding of waiver. Fireman's Fund *did* understand that its objections were preserved because that was precisely what Judge Hurd told the parties.

Nor was Judge Hurd's statement an empty assurance. To the contrary, it was a *ruling* that the parties had satisfied the objection requirements of Rule 51. *See, e.g., Southern Nat. Gas Co. v. Wilson*, 304 F.2d 253, 261-62 & n.2 (5th Cir. 1962) (objection preserved where "the district court expressly granted such objections and declined to hear reasons for the objections," even though the court subsequently asked if there were "any further requests or exceptions"). As a result, Utica's repeated invocations of Rule 51 miss the point.

Not only was Fireman's Fund legally entitled to rely on the court's ruling that its objections were preserved, the court gave it no alternative. After a discussion of relatively minor edits to the instructions proposed by both sides,

Fireman's Fund's counsel tried to raise the subject of its proposed constructive

notice instruction. The court cut him off, reiterating its prior ruling:

> MR. WILLIAMS: Your Honor, construct[ive] notice, we have
> submitted a charge –
>
> THE COURT: *No, I told you. It's on the record.* You have
> requested, and they have been considered, and to the extent that
> the charge did not cover it, it's been denied.
>
> *We have that on the record. I am not looking for any more*
> *requests.* You have had more opportunities to request charges
> than I have ever seen in a case.

A-1154-55 (Tr. 1791:23-1792:5) (emphasis added).[5] Thus, the court could not

have made it clearer that it would entertain *no* further objections to proposed jury

instructions, because it deemed *all* such objections to have been made under Rule

51.

### 2. The Instructions At Issue Were Erroneous

#### a. The Failure To Give The "Constructive Notice" Instruction Was Erroneous

According to Utica, the proposed "constructive notice" instruction was

unnecessary because "Utica *never* argued constructive notice." Utica Br. at 56.

This is pure semantics. While Utica may not have pursued a constructive notice

theory by name, it certainly did so in substance.

---

[5] This colloquy is presumably the reason that Utica does *not* assert waiver
regarding the proposed constructive notice instruction.

Utica's strategy is illustrated by its examination of one of its experts. Although Utica cites this passage to show that it disclaimed a "constructive notice" theory, Utica Br. at 56-57, it elicited testimony to make exactly the same point:

> Q. Have you heard in your work on this case that Utica is arguing constructive notice?
>
> A. I have not heard that.
>
> Q. Is what Fireman's Fund knew about Goulds pertinent in your view regardless of any constructive notice argument?
>
> A. Yes.
>
> Q. Why?
>
> A. Because it informs them what the nature of the risk was, and we see that most pertinently when we are talking about Seaton and Orion, because obviously they were aware of those claims. ***They would have had a very clear understanding of the nature of the Goulds exposure by virtue of their own participation in it.***

A-1141 (Tr. 1777:4-16) (emphasis added); *see also* Fireman's Fund Br. at 51.

This kind of testimony is exactly why the constructive notice instruction was necessary. Without clear guidance, it was unrealistic to expect the jury to consider such evidence only on the prejudice issue. Thus, the jury almost certainly, and improperly, considered such testimony in deciding whether Fireman's Fund received late notice of the claim.

### b. The Failure To Give The "Timing" Instruction Was Erroneous

The analysis is similar with respect to the proposed "timing of notice" instruction. The requested instruction would have informed the jury that Utica's

notice obligation was tied to the *likelihood* that the loss would reach Fireman's Fund's layer, not the timing of Utica's *actual payments*. Utica does not question that the proposed instruction correctly stated the law. Rather, it argues that the court's far vaguer instruction was proper.

Again, however, Utica fails to acknowledge its own efforts to mislead the jury by repeatedly emphasizing evidence of its *payments* to Goulds. *See* Fireman's Fund Br. at 53-54. Such evidence was obviously meant to suggest that the notice obligation arose far later than evidence of Utica's increasing *reserves* would have suggested. In that light, the proposed instruction was not only accurate, but *necessary* to prevent confusion.

### c. The "Routine Procedures" Instruction Was Misstated, And Therefore Erroneous

As Fireman's Fund showed in its opening brief, the court's jury instruction on "routine procedures" improperly increased Fireman's Fund's burden by adding an element to the defense. Specifically, while New York law required only that Fireman's Fund prove a lack of "routine procedures" for giving notice, the court told the jury that Fireman's Fund also needed to prove that Utica "willfully disregarded the risk to reinsurers by doing so." Fireman's Fund Br. at 55-56.

Utica's main response is that the Second Circuit cases that have discussed the "routine procedures" prong of a late notice defense do not accurately state New York law. But those cases were merely applying basic insurance law. Indeed, they

were relying on a line of cases from New York and elsewhere regarding bad faith conduct by insurers and reinsurers. *See Unigard Sec. Ins. Co., Inc. v. N. River Ins. Co.*, 4 F.3d 1049, 1069 (2d Cir. 1993); *Christiania*, 979 F.2d at 281. There was nothing novel about the notion that a failure to implement routine notice procedures could constitute bad faith, nor that bad faith is a material breach that would relieve the reinsurer of its duty to perform.

### 3.      The Errors Were Not Harmless

This Court reviews instructions "in their entirety to determine whether, on the whole, they provided the jury with an intelligible and accurate portrayal of the applicable law." *United States v. Ford*, 435 F.3d 204, 210 (2d Cir. 2006) (internal quotation marks omitted). Fireman's Fund has already demonstrated why each of these three errors was likely to influence the jury's verdict on late notice. Taken together, the erroneous instructions did not come close to providing the jury with an accurate account of the law governing this critical defense. Therefore, the errors were far from harmless. Moreover, although Utica ignores the point, the "routine procedures" instruction, standing alone, must be considered *per se* harmful because it increased Fireman's Fund's burden of proof. *See Terra Firma Investments (GP) 2 Ltd. v. Citigroup Inc.*, 716 F.3d 296, 298 (2d Cir. 2013).

### D. The District Court's Award Of Nearly $ 1.5 Million In Excess Interest Was Unquestionably Erroneous And Requires Correction

Utica does not contest that under New York law prejudgment interest cannot accrue on unbilled invoices. N.Y.C.P.L.R. §5001(b). Nor does it deny that, in direct conflict with the controlling statute, the District Court awarded Utica a windfall of nearly $1.5 million in interest assessed against amounts before they were owed. Instead, Utica argues that this glaring legal error cannot now be corrected because Rule 60(a), under which Fireman's Fund sought that relief, was the wrong rule. This argument fails for two reasons.

First, Rule 60(a) was the correct procedural vehicle. The dates on which Utica submitted its successive bills to Fireman's Fund were undisputed and in the record. Fireman's Fund made clear to the District Court that it was prepared to accept those dates – the earliest on which interest could ever be said to commence – for purposes of its Rule 60(a) motion. Based on those dates, the District Court could have corrected the interest calculation with no additional fact finding, exactly as contemplated under Rule 60. *See, e.g.*, *Dudley ex rel. Estate of Patton v. Penn-Am. Ins. Co.*, 313 F.3d 662, 665 (2d Cir. 2002) (district court properly construed motion to add pre-judgment interest as one under Rule 60(a) where "[c]alculation of prejudgment interest was purely mechanical").

Second, even if Rule 60(a) was not the correct rule, there is no basis for Utica's assumption that Fireman's Fund forfeited the right to a correction of the

District Court's manifestly wrong calculation. The jury's factual finding that Utica's initial September 22, 2008 billing was a sufficient proof of loss to trigger an obligation **to pay that specific bill** was not, as Utica asserts, a "factual finding" that interest on future bills should also accrue from that date. Utica Br. at 63. Nor, under New York law, could the jury have made any such interpretation. Therefore, if the District Court thought that the jury's findings prevented it from correcting this error under Rule 60(a), it should have modified the judgment under Rule 59(e). *See Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 41 (2d Cir. 1982) ("Notwithstanding a plaintiff's own reliance on Rule 60(b), where a post-judgment motion is timely filed and calls into question the correctness of that judgment it should be treated as a motion under Rule 59(e), however it may be formally styled." (internal quotation marks omitted)).

Moreover, this Court has repeatedly held that it is the *substance* of a motion that matters for the purposes of relief on appeal. *See, e.g.*, *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 136-37 (2d Cir. 2000) (construing motion labeled under Rule 60(b) as one under Rule 59(e) for purposes of determining timeliness of appeal). Fireman's Fund clearly stated the grounds for its motion to correct the interest award in the District Court and raises the exact same argument on appeal. Utica identifies no reason why this Court cannot grant the relief that New York law and basic fairness require.

## III. CONCLUSION

For the reasons discussed above and in Fireman's Fund's opening brief, this

Court should reverse, or at a minimum grant a new trial.

Dated:      New York, New York
              February 8, 2019

Respectfully Submitted,

 /s/ Peter R. Chaffetz

PETER R. CHAFFETZ
STEVEN C. SCHWARTZ
ERIN E. VALENTINE
CHAFFETZ LINDSEY LLP
1700 Broadway, 33rd Floor
New York, NY 10019
Tel. (212) 257-6960
Fax (212) 257-6950

*Attorneys for Appellant*
*Fireman's Fund Insurance Company*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 6,944 words, excluding the parts of the brief exempted by Rule 32(f).

This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

Dated:      New York, New York
           February 8, 2019

                     /s/ Peter R. Chaffetz

                    CHAFFETZ LINDSEY LLP
                    PETER R. CHAFFETZ
                    STEVEN C. SCHWARTZ
                    ERIN E. VALENTINE
                    1700 Broadway, 33rd Floor
                    New York, NY 10019
                    Tel. (212) 257-6960
                    Fax (212) 257-6950

                    *Attorneys for Appellant*
                    *Fireman's Fund Insurance Company*